**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

FILED

NOV 2 0 2019

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 1:19-mj-495 |
| | ) |
| KEVIN HEWLETT, | ) |
| | ) **UNDER SEAL** |
| *Defendant*. | ) |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Tonya Sturgill Griffith, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since in or around February 2002. I currently am assigned to the Washington Field Office ("WFO"), and I am part of the Northern Virginia-Washington, D.C. Child Exploitation and Human Trafficking Task Force. Since joining the FBI, I have investigated violations of federal law involving organized crime, drug trafficking, extra-territorial crime, and terrorism, as well as child exploitation and child pornography offenses.

2. As a Special Agent with the FBI, I have basic and on-the-job training in the investigative area of child exploitation and child pornography. I have participated in federal, multi-jurisdictional, and international investigations of crimes against children. I also am authorized to execute warrants issued under the authority of the United States, and I have participated in numerous search warrants, many of which involved child exploitation or child pornography.

3. As a federal agent, I am authorized to investigate violations of the laws of the United States. Since 2010, I have investigated criminal violations relating to child exploitation

1

and child pornography, including violations pertaining to the illegal production, distribution, receipt, advertisement, presentation, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A.  I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256).

4.      This Affidavit is submitted in support of a criminal complaint and arrest warrant charging **Kevin Hewlett** with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  For the reasons set forth below, I submit that probable cause exists to believe that on or about January 8, 2019, **Kevin Hewlett** knowingly distributed child pornography in Bluemont, Virginia, within the Eastern District of Virginia.

5.      The statements contained in this Affidavit are based on my experience and background as a Special Agent working in the area of child exploitation and child pornography, on information provided by other law enforcement agents, and on my review of reports and records.  I have not set forth every fact resulting from the investigation; rather I have set forth a summary of the investigation to date to establish probable cause.

### STATUTORY AUTHORITY AND DEFINITIONS

6.      18 U.S.C. § 2252(a)(2) and (b)(1) prohibit any person from knowingly distributing, or attempting or conspiring distribute, any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed or shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproducing any visual depiction for distribution using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce or through the mails, if the production of such

2

visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

7.      The term "minor," as defined in 18 U.S.C. § 2256(1), means any person under the age of 18 years.

8.      The term "sexually explicit conduct," as defined in 18 U.S.C. § 2256(2)(A)(i)–(v), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

9.      The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data that is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## INVESTIGATION OF KEVIN HEWLETT

10.     On or about April 24, 2019, a Task Force Officer ("TFO") who is a Loudoun County Sheriff's Department detective assigned to the FBI WFO Child Exploitation and Human Trafficking Task Force was advised that the mother of a minor male had located text messages between her son (hereafter referred to as Minor-1) and **Hewlett** on her son's phone. She indicated that some of these texts discussed a possible sexual relationship between Hewlett and a then 16-year-old minor female, hereafter referred to as Minor-2, who is known to her son. Minor-1's mother also said that her son had allowed Minor-2 to use his phone to communicate with **Hewlett** when Minor-2's parents took her cell phone. Minor-1's mother provided the

Loudoun County Sheriff's Office with the phone Minor-1 and Minor-2 were using to communicate with **Hewlett.**

11.    Pursuant to a search warrant issued by a Loudoun County Circuit Court Magistrate, an extraction was performed by the Loudon County Sheriff's Office on Minor-1's cell phone.  Text messages dated April 12, 2019, between Minor-1 and **Hewlett** were located that read as follows:[1]

|  |  |
|---|---|
| **Hewlett**: | Wait did she tell you about….. |
| Minor-1: | If she did I forgot I don't think about other guys dicks |
| **Hewlett**: | Tell me what you remember she told you about me anything You remembered his hahahha |
| Minor-1: | Well it's a running joke All I remembered was you lasted long |
| **Hewlett**: | That good or bad? |
| Minor-1: | Good and bad |
| **Hewlett**: | ? |
| Minor-1: | Like good bc you didn't finish early Bad bc it was starting to get sore |
| **Hewlett**: | Ohhh |

12.    In other text messages between **Hewlett** and Minor-1 on Minor-1's phone, **Hewlett** stated "I have a 512GB phone hahahaha," and later explained "iPhone X max baby hahaha."  Based, in part, on **Hewlett** identifying these additional devices, a search warrant was issued by a Loudoun County Circuit Court Magistrate to search **Hewlett's** person and seize an "iPhone X Max."  While it is referred to as an iPhone X Max by **Hewlett** and, consequently, in

---

[1] Throughout this affidavit, where electronic messages are quoted, typographical and spelling errors are included.

the search warrant, law enforcement later learned that the formal name of the model is XS Max. The execution of this search warrant is discussed in greater detail below.

13.     On or about April 24, 2019, the TFO interviewed Minor-2 at the Loudoun County Sheriff's Office. Minor-2 said that in the early summer of 2018 she had placed an advertisement on Facebook seeking a farrier to shoe her miniature horses and **Hewlett**, who is a farrier, answered the advertisement. She initially communicated with **Hewlett** using various methods, including her mother's cell phone and Facebook Messenger. During the April 24, 2019 interview, Minor-2 denied a sexual relationship with **Hewlett**, but said that during the summer of 2018 they "kinda had something going on" and described it as "like flirting and stuff."  Minor-2 also said that **Hewlett** had exposed his penis to her on one occasion.

14.     On April 25, 2019 the TFO was contacted by Minor-1's mother. Minor-1 told his mother that Minor-2 had two other cell phones her parents did not know about. Minor-1 indicated that Minor-2 would give those phones to another minor at the end of the school day and retrieve them the next morning.

15.     Later on April 25, 2019, a Loudoun County Sheriff's Office Detective went to the residence of this identified minor and seized a Nokia cell phone, a ZTE cell phone with a cracked screen, a small amount of U.S. currency in coins and bills, a Juul electronic smoking device, multiple Juul pods (the cartridge containing the nicotine that is used with Juul), and various other items (Minor-2 later told law enforcement that all these items were provided to her by **Hewlett**).

16.     Later, pursuant to a search warrant issued by a Loudoun County Circuit Court Magistrate, an extraction was completed on the aforementioned Nokia ZTE cell phone. A conversation between Minor-2 and **Hewlett** was retrieved that read as follows:

| Minor-2: | It sure made it sound like you were mad and told my mom and made my phone loose everything and it made it seem like you wanted to get rid of evidence and throw me under the bus |
|---|---|
| Minor-2: | I'm just upset okay |
| **Hewlett**: | Ya like I'm not I waited all night watching the camera looking for the cops to show up |
| Minor-2: | Ya I was stupid to hook up with my farrier 17 years older then me ig then cuz you use it against me They didn't show up cuz I cover your ass Yet you throw me under the bus and get me in trouble. Ive always covered for you |
| **Hewlett**: | The only reason I'm not in jail now is cause you tell them we are just friends |

17.     On May 7, 2019, in connection with the seizure of the iPhone XS Max, the TFO approached **Hewlett** at his place of employment and asked **Hewlett** if he would agree to talk to the TFO. **Hewlett** agreed to speak with the TFO and directed the TFO to a space in his workplace where they could talk. **Hewlett** was advised that he was not under arrest and was free to decline to speak to the TFO. During the recorded conversation, **Hewlett** denied having sex with Minor-2. **Hewlett** was asked if he ever made a video of himself having sex with Minor-2, and he stated, "No, there's not a video of us having sex. Are you kidding me? That's production of child pornography if we were to have sex." During the conversation with the TFO, **Hewlett** received an incoming call on his iPhone XS Max from a Facebook Messenger account belonging to Minor-2.

18.     Subsequently, pursuant to a search warrant issued by a Loudoun County Circuit Court Magistrate authorizing the search of the iPhone XS Max seized from **Hewlett**, an extraction was performed. During a review of the extraction, the TFO located a file named "b3def1d5ffe4452cbc7f7c053bb892f.mp4" with a creation date of January 8, 2019. The location of the file indicates that the video was associated with the Instagram social media application.

This video is approximately one minute long and depicts **Hewlett** having sexual intercourse with Minor-2. At the beginning of the video, **Hewlett** is in close proximity to the camera. Behind him, Minor-2 is nude and on a bed. **Hewlett**, also nude, then walks over to Minor-2 and stands directly behind her. At approximately the 14 second mark, **Hewlett** inserts his penis into Minor-2 and starts having sexual intercourse with her. At approximately the 26 second mark, a distinctive tattoo on **Hewlett's** left arm is visible.  The tattoo consists of a banner and cross with the names "Veronica" and "Wayne".  At approximately the 40 second mark, **Hewlett** bends over and his face is visible.

19.     During a follow-up interview on or about May 8, 2019, Minor-2 admitted to the TFO that she and **Hewlett** did indeed have a sexual relationship that started at the beginning of the summer in 2018. In subsequent interviews Minor-2 said that she had been communicating with **Hewlett** via Instagram, and that **Hewlett's** Instagram username was "kevin22885."

20.     On or about May 10, 2019, the TFO served a search warrant issued by a Loudoun County Circuit Court Magistrate on Facebook, Inc, which owns Instagram, for the account "kevin22885" and Minor-2's account.  The following portions of a conversation dated January 7, 2019 through January 8, 2019 appeared in the content provided for the "kevin22885" account:[2]

> Minor-2:     So why do wanna fuck in the mirror
>
> **kevin22885**:   So we can see it from a different angle
>
> Minor-2:     Lol you like watching us fuck?
>
> **kevin22885**:   Why wouldn't I
>
> **kevin22885**:   Where should I send it?

---

[2] This is not a complete transcription of the conversation, but rather, it includes only the relevant portions.

**kevin22885**:   Don't you?

Minor-2:      Ive never seen us fuck

Minor-2:      Do you still have the video

**kevin22885**:   Not on this phone it's locked on my other one

**kevin22885**:   I'd have to transfer it to this one

**kevin22885**:   Did you want to see it?

Minor-2:      I kinda do ya

**kevin22885**:   Ok I'll transfer it to this phone tonight

Minor-2:      Yay im curious cuz ive never seen it

**kevin22885**:   Just don't be saving it or showing anyone lol

Minor-2:      I wouldn't dare

**kevin22885**:   Where should I send it:

Minor-2:      On here

Minor-2:      Idc wherever tbh

Minor-2:      No one seesmy phone

**kevin22885**:   I have to shorten it hang on

**kevin22885**:   Here it comes

**kevin22885**:   Crap it was one second too long

**kevin22885**:   You ready

**kevin22885**:   I'm nervous as hell now that I sent it

Minor-2:      Lol yes

Minor-2:      I havnt gotten it

**kevin22885**:   It's sending

8

**kevin22885**:   Im nervous to watch it lol ive never seen myself getting fucked

**kevin22885**:   It's still sending

**kevin22885**:   I'm more nervous if someone seeing it lol

**kevin22885**:   Other than you

21.     On or about May 14, 2019 the TFO interviewed Minor-1. During this interview Minor-1 indicated that Minor-2 had showed him a video of Minor-2 and **Hewlett** engaged in sexual intercourse. Minor-1 stated the video was approximately one minute long and was poor quality. Minor-1 described the video as follows: it starts with someone either setting the camera down or starting it, Minor-2 was leaning on the bed and **Hewlett** was behind her, halfway through the video **Hewlett** reached around and touched Minor-2's breast. Minor-1 said that they were both standing and having sex. The TFO asked if Minor-1 was sure that it was **Hewlett** in the video and he said, "100 percent."  Minor-1 indicated he viewed the video on the cracked phone, which is consistent with the aforementioned ZTE phone. The video was not located during a forensic review of the ZTE phone; however, Minor-1 stated that he had previously reset the phone, and thereby erased any stored data on the phone, at **Hewlett's** instruction.

22.     On or about May 24, 2019, the Loudoun County Sheriff's Office executed a search warrant issued by a Loudoun County Magistrate for **Hewlett's** home located in Bluemont, VA, resulting in the seizure of several laptops.  Based on a visual comparison, the TFO verified the aforementioned video of **Hewlett** and Minor-2 engaging in sexual intercourse was recorded in **Hewlett's** bedroom.

23.     A forensic examination was completed on a Dell Inspiron (hereinafter "the Dell") laptop seized from **Hewlett's** home. The Dell contained a backup for an Apple iPhone 7 Plus. Within this backup the forensic examiner located a two minute and twenty seven second video

titled "video_0000002.mov," which appears to be a longer version of the video found on **Hewlett's** iPhone XS Max. At the beginning of the video, **Hewlett** is in close proximity to the camera, and appears to be either starting or placing the camera. The video continues as previously described, with **Hewlett** behind Minor-2, he inserts his penis into Minor-2 and starts having sexual intercourse with her, eventually bending over so that his face is visible. The video has a created date of August 15, 2018, at 2:45:53 PM, and is associated with an Apple iPhone 7 Plus.

24.     The backup also contained a 33 second video titled "video_0000001.mov," which shows Minor-2 naked and bent over the bed. **Hewlett**, who is also naked, is manipulating the camera while Minor-2 watches him. At approximately 27 seconds Hewlett leaves the camera, walks up behind Minor-2, presses his groin against Minor-2's buttocks, then walks back to the camera and picks up a soda. The video ends there. The video has a created date of August 15, 2018 at 2:45:40 PM.

25.     On or about September 25, 2019, the TFO was contacted by a School Resource Officer ("SRO") with the Loudoun County Sheriff's Office. **Hewlett** came to the attention of the SRO when he was seen circling the parking lot of Minor-2's school.  When questioned about his presence there, **Hewlett** initially refused to identify who he was intending to pick up from the school.  The SRO asked for **Hewlett's** driver's license, and after initially saying he had forgotten it, **Hewlett** admitted that his license was suspended. At that time, another school official arrived and told the SRO that **Hewlett** had previous contact with Minor-2. **Hewlett** then confirmed he was there to pick up Minor-2, and, when asked why, said that the TFO would know.  During the course of this conversation, **Hewlett** received a call from Minor-2, and said that he was talking to police and had to go. The SRO sought and obtained consent to search **Hewlett's** vehicle.  During

the search, the SRO found a container of sex toys, including motorized dildos and anal beads, which **Hewlett** stated were not for use with Minor-2.

26.     The SRO then advised Hewlett of his Miranda rights, which he knowingly waived. **Hewlett** admitted to the SRO that he and Minor-2 had a past intimate relationship. **Hewlett** acknowledged that contact with Minor-2 was inappropriate, and when asked why he would be picking her up from school, **Hewlett** said "[h]ave you ever cared for someone so much, you would do anything to make them happy?"  He also admitted to showing up at Minor-2's house to assist her minor boyfriend, hereafter referred to as Minor-3, run away from home. During their conversation **Hewlett** asked the SRO what was going to happen to him, and the SRO told him that it was up to the court. At the time of this encounter with the SRO, **Hewlett** had two iPhones in his possession. One was an iPhone 6 and the other an iPhone 7 Plus. The SRO informed Hewlett that he was going to seize his phones in connection with his admissions to an ongoing relationship with Minor-2 and his attempt to assist her minor boyfriend in running away.  **Hewlett** signed a consent to search form and provided the passcode for the iPhone 6 to allow the SRO to observe the text messages between himself and Minor-2 regarding **Hewlett** picking her up. **Hewlett** did not give consent for the SRO to view what was on the iPhone 7. The SRO seized both phones. Based on **Hewlett's** admission to the intimate relationship with Minor-2 and helping Minor-3 run away, the SRO created a report in reference to Virginia Criminal Code § 18.2-371, which prohibits any adult from (i) willfully contributing to, encouraging, or causing any act, omission, or condition that renders a child delinquent, in need of services, in need of supervision, or abused or neglected, or (ii) engaging in consensual sexual intercourse with a child 15 or older. During a subsequent conversation with the SRO in connection with this incident, **Hewlett** told the SRO that he was not going to go back into handcuffs.

27.     On or about September 25, 2019, search warrants were issued by a Loudoun County Circuit Court Magistrate to search the two Apple iPhones seized by the SRO.

28.     On October 3, 2019, a forensic examination of iPhone 7 Plus showed it was the source device used to create the backup on **Hewlett's** Dell laptop where the video of **Hewlett** having sex with Minor-2 was located. This backup indicated that the source device had an International Mobile Equipment Identify ("IMEI") number of 359171078142490, which is an exact match for the IMEI number of the iPhone 7 Plus seized by the SRO. The back of the iPhone 7 Plus states that it was "Assembled in China."

29.     While reviewing the text messages from the iPhone 7 Plus, the TFO located text messages between **Hewlett** and Minor-2 that begin on July 7, 2018, which read as follows:

**Hewlett**:     Hope you didnt get in trouble with your mom for my buying you dinner for helping today

Minor-2:     Haha no worries it's all good

**Hewlett**:     You sure? I dont want to be reason you get grounded again

Minor-2:     Lol nah you're cool. She says just don't do it again for a bit cuz she doesn't know you to well yet

Minor-2:     Hey Kevin thanks for lunch today, I appreciated it. I've been thinking about today and was getting the feeling you were hitting in me a bit. Made me a little uncomfortable by trying to get me to go to your house and stuff. And you know, I'm 16 and it's just rubbing me the wrong way and just the talking of moving in and all that. (Name of other juvenile removed) and I are working things out and fixing things and tbh honest he's pretty pissed about me hangin with ya all day I mean idk maybe I'm just reading into things the wrong way but thought I'd say something. But ya thanks again.

**Hewlett**:     Good morning, it was actually dinner. I understand I know your age and wouldn't make the mistake of doing anything inappropriate with you. I gave you the invitation to my house after talking about (name of other juvenile removed) because I misunderstood and thought you were gonna be home alone with

12

both parents out of town, and wanted to give you an option. I thought I sensed that you were nervous about him coming while your parents werent there. Also the moving in was more of a joke not saying you wouldnt be a bad roommate. The last thing I want to do is make you uncomfortable. If you and (name of other juvenile removed) fix things that's great. But also remember you have someone here that will back you up besides your parents and don't let him mistreat you or manipulate you. Your strong and don't deserve to put up with that. Thank you for saying something. Communication is key to understanding. I'll still see you later hopefully.

Minor-2:   Yeah no problem. I was just wanting to clear things up and make sure!! Better to communicate and get the facts all straight then to assume so no worries. So sad about polo :(

30.     On or about October 9, 2018, the TFO conducted a forensic interview of Minor-2. During this interview Minor-2 again stated that in the early part of the summer of 2018 she placed an advertisement on Facebook for a farrier. **Hewlett** answered the advertisement and began tending to her horses.

31.     Minor-2 further stated that shortly after meeting **Hewlett**, she began sneaking out of her house to meet him.  **Hewlett** would take her to his residence in Bluemont, Virginia, where they would have sex.  **Hewlett** offered her marijuana on several occasions and she smoked with him. On the second or third visit to his house, **Hewlett** asked Minor-2 if he could make a video of them engaging in sexual intercourse and she agreed.  Minor-2 said that **Hewlett** placed an iPhone on the bedframe, activated the camera and began to have sex with her. Minor-2 said that she asked **Hewlett** to send her the video so she could see it. The video would not send via text message so **Hewlett** sent it to her via Instagram. She said that **Hewlett** later "wiped" his phone completely.

## CONCLUSION

32.     Based on the above information, I respectfully submit that there is probable cause

to believe that on or about January 8, 2019, in the Eastern District of Virginia, **Kevin Hewlett**

knowingly distributed child pornography in violation of 18 U.S.C. § 2252(a)(2).  Therefore, I

respectfully request that a criminal complaint and arrest warrant be issued for **Kevin Hewlett**.


Respectfully submitted,


Tonya Sturgill Griffith, Special Agent
Federal Bureau of Investigation


Sworn and subscribed before me
this  20th    day of November 2019

/s/
Michael S. Nachmanoff
United States Magistrate Judge

The Honorable Michael S. Nachmanoff
United States Magistrate Judge

14