IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,          )
                                   )
                                   )
              v.                   )          Criminal No. 1:20-CR-64
                                   )
KEVIN HEWLETT,                     )
              Defendant.           )

## MEMORANDUM OPINION

At issue pretrial in this production and distribution of child pornography prosecution is defendant Kevin Hewlett's motion to suppress evidence obtained from several of defendant's electronic devices and to suppress statements defendant made to law enforcement on September 25, 2019. Defendant, by counsel, argues that suppression is warranted on three grounds. First, defendant argues that all of the evidence obtained from defendant's electronic devices should be suppressed because the state search warrants that authorized the searches of those devices did not comply with Rule 41, Fed. R. Crim. P., and because the scope of the searches performed on those devices exceeded the scope authorized by the state search warrants. Second, defendant argues that all of the statements that he made to law enforcement officers on September 25, 2019 should be suppressed because those statements were elicited by law enforcement in violation of defendant's Fifth and Sixth Amendment rights to counsel.[1] Third, defendant argues that the evidence obtained from defendant's two iPhones seized on September 25, 2019 should be suppressed because law enforcement did not have probable cause under the Fourth Amendment to seize those iPhones.

---

[1] Defendant's motion to suppress also sought to suppress any statements made by defendant during his arrest on November 22, 2019. But at the June 12, 2020 evidentiary hearing on defendant's motion to suppress, the government stated that it did not intend to use any of defendant's November 22, 2019 statements at trial. Accordingly, this Opinion addresses only the statements made by defendant on September 25, 2019.

An evidentiary hearing on defendant's motion to suppress was held on June 12, 2020, at which the parties presented testimony from three witnesses. Following this evidentiary hearing, the parties were provided the opportunity to file supplemental briefs to address the evidence adduced at the hearing. The parties filed supplemental briefs, and thus the matter is now ripe for disposition. For the reasons that follow, defendant's motion to suppress must be denied in its entirety.

## I.

On March 5, 2020, a federal grand jury returned a two-count Indictment charging defendant Kevin Hewlett with (1) production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e), and (2) distribution of child pornography in violation of §§ 2252(a)(2) and 2252(b)(1). In Count I, the Indictment alleges that on or about August 15, 2018, defendant used an Apple iPhone 7 Plus to produce a video file depicting defendant engaging in sexual intercourse with an underage female identified as MINOR GIRL 1 ("Minor Victim"). In Count II, the Indictment alleges that defendant used Instagram, a social media communication platform, to distribute or attempt to distribute a video of defendant engaging in sexually explicit conduct with Minor Victim.

At a June 12, 2020 hearing on defendant's motion to suppress, the government presented testimony from Loudoun County Sheriff's Office ("LCSO") Detective David Orr and LSCO Deputy Matthew Vess. Defendant testified on his own behalf. The testimony of the three witnesses convincingly establishes the following facts:[2]

**May 7, 2019 Initial Encounter between Defendant and Detective Orr**

- Detective Orr has worked for the LCSO since June 2006. Detective Orr is currently assigned to the FBI's Joint Terrorism Task Force. Prior to September 2019, Detective Orr

---

[2] The ultimate burden of proof on a motion to suppress is on the government to prove facts by a preponderance of the evidence establishing that a government action is consistent with the Constitution. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

2

was a detective with the Special Victims Unit for the LCSO and was assigned to the FBI's Child Exploitation and Human Trafficking Task Force.

- Before Detective Orr approached defendant on May 7, 2019, Detective Orr sought and obtained a search warrant from a Magistrate of the Loudoun County Circuit Court to seize defendant's iPhone XS Max (the "First Search Warrant").

- On May 7, 2019, Detective Orr, armed with the First Search Warrant, approached defendant at his place of business and asked if defendant would agree to speak with him. Detective Orr explained to defendant that defendant was under no obligation to speak with Detective Orr and that if defendant was uncomfortable then Detective Orr would simply execute the First Search Warrant, take the iPhone XS Max, and leave. Defendant agreed to speak with Detective Orr.

- Defendant did not request a lawyer at any point during the May 7, 2019 interview.

- In response to questions from Detective Orr, defendant said that he was not in a sexual relationship with the Minor Victim and that there was no video of defendant having sex with the Minor Victim because such a video would have been production of child pornography.

- Detective Orr then executed the First Search Warrant and seized an iPhone XS Max from defendant. Detective Orr did not arrest defendant on May 7, 2019.

- Thereafter Detective Orr sought and obtained a search warrant from a Magistrate of the Loudoun County Circuit Court authorizing a forensic examination of the iPhone XS Max (the "Second Search Warrant").

- An LCSO forensic examiner conducted the forensic examination pursuant to the Second Search Warrant.

- On the iPhone XS Max, in a folder associated with the Instagram social media application, LCSO located an approximately one-minute video in which defendant engages in a sexual act with the Minor Victim.

## May 24, 2019 Search of Defendant's Home

- Based on the discovery of the video of defendant having sexual intercourse with the Minor Victim on defendant's iPhone XS Max, Detective Orr sought and obtained a warrant to search defendant's residence from a Magistrate of the Loudoun County Circuit Court (the "Third Search Warrant").

- On May 24, 2019, Detective Orr and four other officers with the LCSO executed the Third Search Warrant. A Dell laptop was seized from defendant's residence.

- During the search, LCSO dispatch received a call from defendant asking why law enforcement was at his house. Detective Orr returned defendant's call and explained that law enforcement was executing a search warrant at defendant's residence.

- At the end of this telephone call between defendant and Detective Orr, defendant informed Detective Orr that Detective Orr would be hearing from defendant's attorney.

- Later that same day, May 24, 2019, Detective Orr received a call from defendant's attorney. Defendant's attorney asked Detective Orr about the current status of the case against defendant. During this conversation, defendant's attorney never told Detective Orr not to contact defendant without her present.

- After the conclusion of the search of defendant's residence, an LCSO forensic examiner conducted a forensic examination of the Dell laptop seized from defendant's residence.

- On the Dell laptop, LCSO found a longer version of the video previously found on defendant's iPhone XS Max, in which defendant engages in sexual intercourse with the Minor Victim.

- The forensics examination also revealed a second video on the Dell laptop. In the second video, defendant, while nude, adjusts the camera, then walks behind the Minor Victim, who is also nude, and presses his pelvis against her buttocks before walking back to the camera.

## August 2019 Telephone Call between Defendant and Detective Orr

- In August 2019, Detective Orr received a phone call from defendant.

- At the start of this telephone call, Detective Orr reminded defendant that the last time Detective Orr and defendant spoke, defendant told Detective Orr that defendant was getting a lawyer. Despite this reminder, defendant said he nonetheless wanted to talk to Detective Orr and explained that he had a witness with him on the telephone call.

- During this telephone call, defendant informed Detective Orr that defendant went to a car show to pick someone up, and the Minor Victim was at the car show. Defendant told Detective Orr that the Minor Victim rear-ended defendant's vehicle when defendant was driving home from the car show.

- During this telephone call, defendant never said that he did not want to speak with Detective Orr without a lawyer.[3]

---

[3] In Detective Orr's written report regarding the August 2019 phone call, Detective Orr wrote that he informed defendant that defendant had previously "invoked his right to counsel." During the June 12, 2020 evidentiary hearing, Detective Orr testified that he never used the words "invoked the right to counsel" on the telephone call with defendant. Detective Orr testified that he wrote that defendant "invoked his right to counsel" in the report because Detective Orr interpreted that phrase to mean that defendant had a lawyer. In any event, Detective Orr's

## September 25, 2019 Encounter between Defendant and Deputy Vess

- LCSO Deputy Vess has worked for the LCSO since January 2007. Deputy Vess is currently assigned as the School Resource Officer at the Minor Victim's high school ("HS"). Deputy Vess has served as a School Resource Officer for approximately seven years and was assigned to the Minor Victim's HS in 2019. Deputy Vess's primary responsibility as a School Resource Officer is to uphold the safety and security of the HS. These responsibilities include the enforcement of trespassing laws.

- The HS has signs posted at the entryway to the HS that indicate that entry onto school property constitutes consent to surveillance, recording and search of persons or property. These signs also provide notice that trespass during school hours or by unauthorized persons is prohibited.

- At the HS, teachers are assigned to each parking lot to monitor students during the drop-off and pick-up hours of the day.

- On the morning of September 25, 2019, the teacher who is assigned to monitor the senior parking lot every day notified Deputy Vess of a suspicious black vehicle circling the senior parking lot. The teacher also informed Deputy Vess that the teacher observed the same vehicle with the same male driver picking up an underage female the previous day.

- Based on this information, Deputy Vess proceeded to walk to the senior parking lot. There, Deputy Vess observed that the black vehicle reported by the teacher was not traveling within the designated lane for entry and exit of the drop-off location, nor was the vehicle parked in a parking spot. Instead, the black vehicle was in a separate lane from the drop-off lane and was not heading toward the exit of the parking lot.

- As Deputy Vess approached the vehicle, he made eye contact with the driver, who then began looking around the parking lot "frantically as if to look for an exit."[4] The driver was later identified as defendant.

- Deputy Vess signaled for defendant to roll down his window and asked defendant what brought defendant to the HS.

- Defendant said he was there to pick up a family friend, but defendant said he did not need to pick up the family friend and he would leave the HS.

- Deputy Vess then asked defendant for his driver's license because Deputy Vess believed that defendant did not have a lawful right to be on HS property. At first, defendant claimed

---

written report of the August 2019 phone call is not relevant to defendant's motion to suppress his statements made on September 25, 2019 for the reasons stated in Part III, *infra*.

[4] *See* June 12, 2020 Hearing Transcript, Dkt. 71, 59:21-23.

he had forgotten his driver's license, but then defendant admitted that he thought his driver's license was suspended.[5]

- At that point, Deputy Vess instructed defendant to pull into a parking spot and exit his vehicle because defendant's suspended license prohibited him from lawfully driving a motor vehicle.[6] Deputy Vess informed defendant that he would assist defendant in getting a tow truck for his vehicle.

- While Deputy Vess was speaking with defendant, defendant received a telephone call. Deputy Vess heard the caller's female voice ask where defendant was, and defendant responded that he was talking to the police. Defendant later admitted to Deputy Vess that the caller was the Minor Victim.

- At that point, a civilian Safety and Security Officer ("SSO") with the HS arrived at the scene and informed Deputy Vess that there was a history of interaction between defendant and the Minor Victim. The SSO is an employee of the Loudoun County Public Schools and had been assigned to the HS for over 20 years.

- Deputy Vess then asked defendant if he was there to pick up the Minor Victim, and defendant said that Detective Orr would know.

- Deputy Vess contacted Detective Orr, and Detective Orr then informed Deputy Vess that there was an ongoing LCSO investigation into defendant regarding allegations that defendant was having a sexual relationship with the Minor Victim. Detective Orr advised Deputy Vess to proceed with his investigation of defendant's unauthorized presence at the HS as Deputy Vess would investigate the unauthorized presence at the HS of any other individual.

- Deputy Vess next instructed the SSO to call the Minor Victim's parents to determine whether defendant was authorized to pick up the Minor Victim from the HS. The SSO told

---

[5] Defendant testified on cross-examination that he was not sure whether his license was suspended on September 25, 2019 because defendant thought Virginia passed a bill that went into effect in June 2019 that reinstated driving privileges for those, like defendant, whose license had been suspended for not paying tickets and fines. In response, the government has submitted a Leesburg Police Report with their supplemental brief that establishes that defendant was arrested for driving with a suspended license on August 18, 2019. Accordingly, defendant's claim that he was not sure on September 25, 2019 whether his license had been suspended is not credible.

[6] Defendant testified that Deputy Vess placed defendant in handcuffs after Deputy Vess instructed defendant to exit his vehicle. *See* June 12, 2020 Hearing Transcript, Dkt. 71, 119:23-120:5. Deputy Vess did not testify that he placed defendant in handcuffs at any point, nor was Deputy Vess asked whether he placed defendant in handcuffs. Defendant further testified that Deputy Vess removed the handcuffs later in the interaction. *See id.* at 122:14-24. The dash cam video submitted as evidence, which purportedly begins after defendant's alleged handcuffing, does not show defendant in handcuffs at any point during his recorded conversation with Deputy Vess. On this record, defendant's claim that Deputy Vess placed him in handcuffs after instructing defendant to exit his car is not credible. In any event, even assuming Deputy Vess placed defendant in handcuffs for a brief period of time after instructing defendant to exit his vehicle, Deputy Vess had probable cause to arrest defendant for driving on a suspended license, in violation of Va. Code § 46.2-301. Accordingly, even assuming that defendant was temporarily placed in handcuffs, his constitutional rights were not violated as a result of that action.

Deputy Vess that the Minor Victim's parents said that defendant did not have authorization to pick up the Minor Victim and that defendant was not listed in the school-maintained database as someone who was authorized to pick up the Minor Victim from the HS.

- At that point, Deputy Vess asked defendant's permission to search the vehicle for guns, drugs, or ammunition. Deputy Vess testified that defendant consented to this search.[7] Inside a blue bag in the vehicle, Deputy Vess found a collection of sex toys.

- Deputy Vess then advised defendant of his *Miranda* rights as follows:

  o Before I ask you any questions, you must understand your rights. You have the right to remain silent, and if you remain silent your silence will not be used against you in court. Anything you say can and will be used against you in court. You have a right to talk to a lawyer for advice before we ask any questions and to have them with you during questioning. If you cannot afford a lawyer, one will be provided for you by the state before questioning, if you wish. If you decide to answer questions without a lawyer present, you will still have the right to stop answer[ing] at any time. You will also have the right to stop answering at any time until you talk to a lawyer.

- Defendant responded that he understood his rights and that he would answer the questions that he could. Defendant did not request a lawyer.

---

[7] Defendant provided conflicting testimony regarding whether he consented to Deputy Vess's request to search his vehicle for guns, drugs, or ammunition. On direct examination, defendant testified that after he exited his car,

> Deputy Vess was asking if [he] had anything illegal in the car, marijuana, guns, knives, anything of that nature. [Defendant] told [Deputy Vess] [he] did not. [Deputy Vess] told [defendant] that [he] could either give consent for [Deputy Vess] to search the car or [Deputy Vess] would get a warrant. [Defendant] told [Deputy Vess] there was nothing in the car for [Deputy Vess] to find...
>
> [Defendant] felt like if [he] didn't allow [Deputy Vess] to search [his] car..., then [defendant] would be subject to harsher penalties...
>
> [Deputy Vess] then proceeded to go back and search [defendant's] car.

*See* June 12, 2020 Hearing Transcript, Dkt. 71, 121:9-122:20. Defendant's direct testimony implies that he provided Deputy Vess consent to search his car for guns, drugs, or ammunition. But on cross-examination, defendant testified that he did not give Deputy Vess consent to search his vehicle. *See id.* at 138:14-16. Defendant's testimony that he did not give Deputy Vess consent to search his vehicle is not credible given Deputy Vess's credible testimony that defendant consented to the search of his vehicle and defendant's testimony on direct examination that points persuasively to the same conclusion. Accordingly, defendant's claim that he did not consent to Deputy Vess's search of his vehicle is not credited.

7

- When Deputy Vess asked why defendant was there to pick up the Minor Victim despite not being authorized to do so, defendant asked Deputy Vess if he had "ever care[d] for someone so much you would do anything to make them happy."[8]

- Defendant possessed two iPhones when stopped by Deputy Vess at the HS.

- Deputy Vess informed defendant that Deputy Vess was seizing defendant's phones and that a warrant to search the phones would be sought because Deputy Vess had probable cause to believe that the phones would contain evidence of defendant's communications with the Minor Victim relating to the crime of contributing to the delinquency of a minor, in violation of Va. Code § 18.2-371.

- After defendant expressed concern about how long it would take for defendant to get his phones back, Deputy Vess told defendant that he would get his phones back sooner if defendant consented to the search.

- Defendant then signed a consent to search and seize form authorizing LCSO to seize and search his two iPhones.

- Defendant was not arrested at the end of the September 25, 2019 encounter with Deputy Vess.

- Even though defendant provided written consent to search the phones seized on September 25, 2019, law enforcement nonetheless promptly obtained search warrants issued by a Magistrate of the Loudoun County Circuit Court authorizing forensic examinations of the iPhones (the "Fourth Search Warrant" and the "Fifth Search Warrant"). An LCSO forensic examiner performed a forensic examination on each of the two iPhones.

## II.

As an initial matter, defendant argues that all of the evidence from defendant's electronic devices should be suppressed because the federal government has relied exclusively on state search warrants that do not comply with Rule 41, Fed. R. Crim. P., and because the state search warrants did not explicitly authorize a search for evidence of child pornography. Defendant thus contends that the searches performed exceeded the scope of the warrants issued.[9] But defendant's argument

---

[8] *See* Dash Cam Video of September 25, 2019 Interview with Defendant, Government Exhibit 3.

[9] Defendant's assertion that the state search warrants did not explicitly authorize a search for child pornography is incorrect with respect to the search and seizure of defendant's Dell laptop. The state search warrant for defendant's residence and the seizure of defendant's Dell laptop was based on probable cause that the residence and the laptop would contain evidence of production of child pornography, in violation of Va. Code § 18.2-374.1. In contrast, the

in this respect plainly fails for the reasons that follow.

Defendant's argument that the state search warrants are invalid because Rule 41, Fed. R. Crim. P., requires that search warrants be issued by a federal magistrate or a state judge, not by a state magistrate, completely misses the mark.[10] Rule 41, Fed. R. Crim. P., is applicable "only to searches where there is participation by federal officers." *United States v. Hamlin*, 540 F.2d 742, 743 (4th Cir. 1976). Indeed, the Fourth Circuit in *Hamlin* made clear that "[w]here the circumstances support the conclusion that the search was a state, not a federal, undertaking, evidence obtained in an otherwise legal search is not inadmissible because the warrant was obtained from a state magistrate rather than from one of the officials designated by Rule 41." *Id.* (citing *United States v. Johnson*, 451 F.2d 1321, 1322 (4th Cir. 1971), *cert. denied* 405 U.S. 1018 (1972)). This is precisely what occurred here.

Each of the state warrants at issue in this case:

- o  (i) was applied for by a state officer;
- o  (ii) sought evidence of violations of state law;
- o  (iii) was authorized by a state magistrate;
- o  (iv) was executed by a state officer; and
- o  (v) was returned to a state clerk of court.

Moreover, the subsequent forensic examinations of defendant's electronic devices were also conducted by state forensic examiners. On this record therefore, it is clear that the investigation which led to this federal prosecution was clearly a state undertaking without federal participation.

---

state search warrant for defendant's iPhone XS Max authorized a search for evidence of contributing to the delinquency of the minor, in violation of Va. Code § 18.2-371, and for evidence of use of communications systems to facilitate certain offenses involving children, in violation of Va. Code § 18.2-374.3.

[10] Defendant, by counsel, does not dispute that the state search warrants in this case were issued in accordance with state law and that probable cause was shown for the issuance of the warrants.

Where, as here, federal agents were not involved in the challenged search, Rule 41 is inapplicable, and the evidence obtained in a legal search undertaken by state law enforcement authorities is admissible in a federal criminal trial. *See United States v. Hamlin*, 540 F.2d 742, 743 (4th Cir. 1976).[11] Accordingly, defendant's argument for suppression of evidence on the basis of Rule 41, Fed. R. Crim. P., must be denied.

Defendant also argues that because federal investigators did not obtain their own warrant to search defendant's cell phones for evidence of child pornography, the evidence of child pornography discovered on defendant's cell phones must be suppressed. More specifically, defendant argues that the evidence of child pornography exceeded the scope of the state search warrants that were obtained by LCSO from a state magistrate. Defendant's argument in this respect also plainly fails.

The state search warrant for defendant's iPhone XS Max authorized a search for evidence of contributing to the delinquency of the minor, in violation of Va. Code § 18.2-371,[12] and for evidence of use of communications systems to facilitate certain offenses involving children, in violation of Va. Code § 18.2-374.3.[13] And the child pornography evidence that the LCSO discovered on defendant's iPhone XS Max, namely a video of defendant having sexual intercourse with the Minor Victim, was *clearly* evidence of contributing to delinquency of a minor, and was

---

[11] *See also United States v. Claridy*, 601 F.3d 276, 283 (4th Cir. 2010) (holding that Rule 41, Fed. R. Crim. P., was inapplicable to a warrant obtained from a state judge by a state law enforcement officer who was a member of a joint federal-state investigation because the warrant was the subject of a state warrant proceeding governed by state law).

[12] Virginia Code § 18.2-371 provides in relevant part that: "Any person 18 years of age or older, including the parent of any child, who...engages in consensual sexual intercourse or anal intercourse with or performs cunnilingus, fellatio, or anilingus upon or by a child 15 or older not his spouse, child, or grandchild is guilty of a Class 1 misdemeanor." Va. Code § 18.2-371.

[13] Virginia Code § 18.2-374.3 provides in relevant part that: "It is unlawful for any person to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means for the purposes of procuring or promoting the use of a minor for any activity" involving child pornography. Va. Code § 18.2-374.3(B).

*clearly* evidence of the use of communications systems to facilitate certain offenses involving children. Accordingly, the LCSO search that discovered the child pornography video on defendant's iPhone XS Max was authorized by the state search warrant obtained by LCSO.

Seeking to avoid this conclusion, defendant cites *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010) and guidance from the Department of Justice. In *Williams*, an FBI agent conducting a search under a state warrant for evidence related to the state crime of threat to commit serious harm to persons on school property stopped the search when the agent came across images of child pornography and obtained a second search warrant to search for child pornography. *See Williams*, 592 F.3d at 516 n.2. And Department of Justice guidance provides that "it remains prudent to seek a second warrant upon discovering evidence of an additional crime not identified in the initial warrant." U.S. Dep't of Justice, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* 91 (2009). In this respect, it is true that "when law enforcement personnel obtain a warrant to search for a specific crime[,] but later, for whatever reason, seek to broaden their scope to search for evidence of another crime, a new warrant is required." *United States v. Nasher-Alneam*, 399 F. Supp. 3d 579, 592 (S.D. W. Va. 2019) (citing *United States v. Mann*, 592 F.3d 779, 786 (7th Cir. 2010)) (holding that government search for evidence of healthcare billing fraud was not covered by search warrant that authorized search for evidence of violations of the Controlled Substances Act).

But that is clearly not what happened in this case. Here, law enforcement officers *did not* broaden the scope of their search in order to obtain evidence of another crime. Indeed, the child pornography video discovered by LCSO officials during the search of defendant's iPhone XS Max[14] was evidence of the crime for which the warrant authorized the search. More specifically,

---

[14] The same child pornography video was found on defendant's iPhone seized on September 25, 2019, and therefore

a video of defendant having sex with the Minor Victim *is clearly evidence* that defendant contributed to the delinquency of the minor, in violation of Va. Code § 18.2-371. Moreover, the child pornography video *is clearly evidence* that defendant used a communications system to facilitate the production of child pornography, in violation of Va. Code § 18.2-374.3. Simply put, the child pornography video discovered on defendant's iPhone XS Max was evidence of defendant's commission of the Virginia state crimes for which the state search warrants authorized LCSO to search defendant's iPhone XS Max. Indeed, there is hardly more conclusive evidence of contributing to the delinquency of a minor than a video of the defendant actually committing the crime of having sex with the Minor Victim.

That the video found on defendant's iPhone XS Max was evidence of multiple crimes does not vitiate the validity of the state search warrants. The cases defendant relies on are inapposite. In those cases, law enforcement officers exceeded the scope of a search warrant by searching for evidence of crimes unrelated to the crime for which the warrant authorized the search. For example, where a search warrant authorized a search for evidence of violations of the Controlled Substances Act, law enforcement officers exceeded the scope of the search warrant by searching for evidence of healthcare billing fraud. *See United States v. Nasher-Alneam*, 399 F. Supp. 3d 579, 594 (S.D. W. Va. 2019). As noted, in this case, law enforcement officers searched only for evidence of the Virginia state crimes authorized by the state search warrant. And evidence obtained pursuant to the execution of a valid state search warrant is admissible in a subsequent federal prosecution provided that the evidence was obtained in accordance with the Fourth Amendment. *See United States v. Clyburn*, 24 F.3d 613, 616-17 (4th Cir. 1994). Accordingly, defendant's argument for the suppression of the evidence obtained from defendant's electronic devices on the

---

this same analysis applies to the search of that iPhone.

12

ground that the state search warrants did not explicitly authorize a search for child pornography must be denied.[15]

## III.

Next, defendant argues that any statements made by defendant in the course of his encounter with law enforcement officers on September 25, 2019 should be suppressed because defendant invoked his Fifth and Sixth Amendment rights to counsel on May 24, 2019, and therefore the LCSO's interrogation of defendant on September 25, 2019 violated defendant's Fifth and Sixth Amendment rights. For the reasons that follow, defendant's motion to suppress statements made by defendant during the September 25, 2019 encounter with law enforcement in the HS parking lot must be denied.

## A.

The scope of an accused's right to counsel under the Fifth Amendment is bounded by the explicit right from which it is derived—namely, the right to be free from compelled self-incrimination. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Thus, the Fifth Amendment right to counsel arises only in situations where the right to be free from compelled self-incrimination might be threatened, as, for example, where an individual is subjected to custodial interrogation by law enforcement. And it is triggered only by "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) (emphasis in original).

---

[15] In defendant's supplemental brief, defendant appears to claim that state law enforcement's copying of the child pornography video to provide the evidence to federal law enforcement authorities is somehow criminal, citing only to 18 U.S.C. § 3509(m). This claim is meritless. Section 3509(m)(1) provides that "[i]n any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) shall remain in the care, custody, and control of either the Government or the court." *See* 18 U.S.C. Section 3509(m). Here, it is undisputed that the child pornography at issue in this case has remained in the custody of the government as required by § 3509(m). Accordingly, defendant's argument that § 3509(m) has been violated in this case is completely meritless.

In other words, an accused does not invoke his Fifth Amendment right to counsel by requesting the assistance of counsel in a context other than custodial interrogation. In *McNeil*, for example, the defendant argued that his request for counsel at an initial appearance on a charged offense was sufficient to invoke his Fifth Amendment right to counsel. The Supreme Court disagreed, holding that the Fifth Amendment right "applies only when the suspect 'ha[s] *expressed* his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*,'" that is, assistance in dealing with questions from law enforcement in the custodial context. *McNeil*, 501 U.S. at 178 (quoting *Edwards v. Arizona*, 451 U.S. 477, 484 (1981)) (emphasis in original). But where the Fifth Amendment right to counsel is properly invoked, it applies to all custodial interrogation whatever the subject. If the suspect is interrogated without counsel in violation of this right, his statements are presumed involuntary and are therefore inadmissible at trial, even where the suspect executes a waiver that would render his statements voluntary under traditional standards. *See Michigan v. Harvey*, 494 U.S. 344, 350 (1990). But importantly, the law clearly requires that an assertion of the Fifth Amendment right must occur in the custodial interrogation context.

In this case, defendant did not assert his Fifth Amendment right to counsel in the custodial interrogation context; to the contrary, he explicitly waived that right after Deputy Vess read him his *Miranda* rights on September 25, 2019. Seeking to avoid this conclusion, defendant argues that he invoked his Fifth Amendment right to counsel on May 24, 2019, when defendant informed Detective Orr that defendant's attorney would be contacting law enforcement. And defendant further argues that his May 24, 2019 invocation of his right to counsel remained in effect on September 25, 2019. In support of this argument, defendant relies primarily on *Edwards v. Arizona*, 451 U.S. 477 (1981), where the Supreme Court held that "when an accused has invoked

14

his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484.

But it is well-settled that a person cannot "invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'" *McNeil*, 501 U.S. at 182 n.3. A person is "in custody" for purposes of *Miranda* if the person has been arrested or if his or her freedom of action has been curtailed to a degree associated with arrest. *See Stansbury v. California*, 511 U.S. 318, 322 (1994). Here, the factual record makes clear, and it is undisputed, that defendant *was not in custody* on May 24, 2019 when defendant allegedly invoked his Fifth Amendment right to counsel. Indeed, on May 24, 2019, defendant called law enforcement to inquire why law enforcement was in defendant's house, and Detective Orr returned defendant's telephone call to inform defendant that law enforcement officers were executing a search warrant at defendant's home. On this telephone call, defendant told Detective Orr that defendant's attorney would be contacting law enforcement. Defendant essentially claims that informing Detective Orr that defendant had an attorney required cessation of all questioning. This is not true; the Supreme Court has specifically rejected the assertion that "once a defendant is *represented* by counsel, police may not initiate any further interrogation." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

Moreover, Detective Orr did not question defendant on May 24, 2019, and Detective Orr did not detain defendant, nor even interact with defendant in-person on May 24, 2019. Accordingly, defendant was not in custody and was not interrogated on May 24, 2019, and therefore defendant could not, and did not, invoke his Fifth Amendment right to counsel at that time. *See Burket v. Angelone*, 208 F.3d 172, 179 (4th Cir. 2000) (holding that an individual who is not in custody for the purposes of *Miranda* cannot "invoke the protections provided by

*Miranda*.").[16]

Even assuming, *arguendo*, that defendant validly invoked his Fifth Amendment right to counsel on May 24, 2019 (which he did not), the prophylactic *Edwards* rule that prevents further police-initiated custodial interrogation does not extend into perpetuity. In this regard, the Supreme Court has made clear that a 14-day break in custody after a suspect has invoked *Miranda*'s protections is a sufficient period of time to allow law enforcement to re-initiate custodial interrogation. *See Maryland v. Shatzer*, 559 U.S. 98, 109-10 (2010). Defendant argues that his statements made on September 25, 2019 should be suppressed because of his invocation of his Fifth Amendment right to counsel, but defendant had no interaction with law enforcement in the fourteen days prior to the challenged encounter.[17] Accordingly, the *Edwards* rule prohibiting police-initiated custodial interrogation after a suspect has invoked his right to counsel does not apply here. Defendant's statements to law enforcement on September 25, 2019 cannot be suppressed based on defendant's alleged invocation of his Fifth Amendment right to counsel on May 24, 2019.

To the contrary, it is well-settled that "[w]hat matters for *Miranda* and *Edwards* is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation." *Montejo v. Louisiana*, 556 U.S. 778, 797 (2009). In this case what

---

[16] *See also Brosius v. Warden, U.S. Penitentiary, Lewisburg*, 278 F.3d 239, 249 (3d Cir. 2002) (holding that the prohibition on further interrogation of an individual who has exercised his *Miranda* right to counsel "applies only where the suspect makes the request for counsel *while in custody*.") (emphasis in original); *United States v. Wyatt*, 179 F.3d 532, 537 (7th Cir. 1999) ("The Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody, even if in anticipation of future custodial interrogation.") (internal citation omitted); *United States v. Bautista*, 145 F.3d 1140, 1147 (10th Cir. 1998) ("[I]n order to implicate the *Miranda-Edwards* right to counsel prophylaxis, both a custodial situation and official interrogation are required."), *cert. denied*, 525 U.S. 911 (1998).

[17] In this respect, the August 2019 phone call and Detective Orr's written report of that phone call are completely irrelevant in determining whether defendant had invoked his Fifth Amendment right to counsel on September 25, 2019 as more than 14 days had elapsed between police interactions.

happened is that on September 25, 2019, defendant was questioned by Deputy Vess in the Minor Victim's HS parking lot. But prior to making the statements that defendant seeks to have suppressed, Deputy Vess advised defendant of his *Miranda* rights, and defendant (i) responded that he understood his rights, (ii) stated that he would answer the questions that he could, and (iii) did not request a lawyer. Defendant could have refused to answer Deputy Vess's questions or invoked his right to counsel on September 25, 2019, but he did not do so. Instead, defendant answered some of Deputy Vess's questions after waiving his *Miranda* rights. There is nothing to suggest that defendant's *Miranda* waiver on September 25, 2019 was anything less than fully informed and voluntary. Accordingly, Deputy Vess's questioning on September 25, 2019 was fully consonant with defendant's Fifth Amendment rights. The motion under the Fifth Amendment to suppress defendant's voluntary statements to Deputy Vess on that date, along with any fruits therefrom, must be denied.

**B.**

Defendant also argues that Deputy Vess's September 25, 2019 interview of defendant was in violation of defendant's Sixth Amendment right to counsel and should be suppressed. In this respect, defendant's argument also plainly fails.

The Sixth Amendment right to counsel differs from its Fifth Amendment counterpart; it is broader in one sense and narrower in another. It is broader than the Fifth Amendment right because it applies at any critical stage of the prosecution, not merely during custodial interrogation. *McNeil*, 501 U.S. at 178. At the same time, the Sixth Amendment right to counsel is narrower than the Fifth Amendment in another respect because it relates only to interrogation regarding a crime for which a prosecution is pending; it is, unlike the Fifth Amendment right, offense specific. *Id.* An individual thus cannot invoke this right once for all future prosecutions, as the right does not attach until a

prosecution formally begins and "the adverse positions of government and defendant have solidified" with respect to a particular alleged offense. *United States v. Gouveia*, 467 U.S. 180, 189 (1984). Accordingly, the Sixth Amendment right to counsel does not attach until "'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Id.* at 188 (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality opinion)). After the Sixth Amendment right to counsel attaches, the right applies at all critical stages of the criminal proceedings. *United States v. Henry*, 447 U.S. 264, 269 (1980).

Here, adversary judicial criminal proceedings had not commenced against defendant at the time that defendant made the challenged statements to law enforcement. As of September 25, 2019, no charges had been filed against defendant and no criminal proceedings had commenced with respect to defendant's alleged relationship with the Minor Victim. Accordingly, defendant did not have a Sixth Amendment right to counsel at the time of his interview with Deputy Vess on September 25, 2019, nor did defendant have a Sixth Amendment right to counsel at any time prior to September 25, 2019. Thus, defendant's motion under the Sixth Amendment to suppress his voluntary statements to Deputy Vess on September 25, 2019, along with any fruits therefrom, must be denied.

**IV.**

Finally, defendant moves to suppress all evidence obtained from the two iPhones seized from defendant on September 25, 2019 because defendant claims that the seizure and the search of the two iPhones violated defendant's Fourth Amendment rights. For the reasons that follow, this claim fails.

Analysis of defendant's Fourth Amendment suppression argument properly begins with

18

the question whether Deputy Vess's investigatory stop of defendant in the HS parking lot on September 25, 2019 was "unreasonable" under the Fourth Amendment. U.S. Const. amend. IV (guaranteeing "[t]he right of people to be secure…against unreasonable searches and seizures"). If the stop was unreasonable, defendant's motion should be granted, and the evidence obtained as a result of his search and seizure of the two iPhones should be suppressed as fruit of the poisonous tree. *See United States v. Calandra*, 414 U.S. 338, 347 (1974). But as the factual record makes quite clear, the investigatory stop of defendant at issue here was reasonable under the Fourth Amendment.

It is now well-settled that a brief, investigatory stop is reasonable if the detaining officer has "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The government argues that precisely this occurred here. Defendant, by counsel, disagrees, arguing (i) that Deputy Vess did not have reasonable suspicion to stop defendant's vehicle in the Minor Victim's HS parking lot on September 25, 2019; and (ii) that even if defendant's detention was a valid *Terry* stop, Deputy Vess did not have probable cause for the warrantless seizure of defendant's two iPhones incident to the vehicle stop.

The Fourth Circuit has made clear that "[b]ecause a traffic stop is more akin to an investigative detention than a custodial arrest,…the *Terry*…standard [is applied] in determining the constitutionality of the stop." *United States v. Bernard*, 927 F.3d 799, 805 (4th Cir. 2019) (citing *United States v. Green*, 740 F.3d 275, 279 (4th Cir. 2014)). Accordingly, an officer must have reasonable suspicion to stop an automobile. *Id.* Reasonable suspicion is "something more than an 'inchoate and unparticularized suspicion or hunch'" but something "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1,

7 (1989) (quoting *Terry v. Ohio*, 392 U.S. at 27). An officer must have "'a particularized and objective basis for suspecting the person stopped for criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396–97 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). The essential question is this: "[W]ould the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. at 21–22.

The record in this case convincingly establishes that this standard was met here. First, the totality of the circumstances justified Deputy Vess's stop of defendant's vehicle to investigate defendant's reasons for being at the HS. Virginia Code § 18.2-128(b) makes it unlawful "for any person…to enter upon or remain upon…school property in violation of (i) any direction to vacate the property by a person authorized to give such direction or (ii) any posted notice which contains such information, posted at a place where it reasonably may be seen." Va. Code § 18.2-128(b). Posted signs at Minor Victim's HS clearly state that trespassing during school hours or by unauthorized persons is prohibited. Accordingly, it is unlawful for people without authorization to enter school grounds.

In this respect, Deputy Vess was informed that (i) a suspicious black vehicle, later identified as defendant's vehicle, was circling the senior parking lot at the HS on the morning of a school day without dropping off any student, and that (ii) the same male driver had picked up an underage female from the HS the previous day. Moreover, the parking lot in which defendant was found is the parking lot reserved exclusively for high school seniors, and Deputy Vess observed that defendant did not appear to be a high school senior. Based on Deputy Vess's approximately seven years as a school resource officer, a vehicle circling the school parking lot in the morning hours without dropping any students off is suspicious. *See United States v. Arvizu*, 534 U.S. 266,

20

273 (2002) (holding that officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them").

In addition, when Deputy Vess made initial eye contact with defendant, defendant began looking around "frantically as if to look for an exit."[18] As the Supreme Court has held, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Defendant's reaction after making eye contact with Deputy Vess served to corroborate Deputy Vess's suspicion that the driver was not authorized to be on school property based on the circling activity of the vehicle without dropping any child off at the HS. Accordingly, the totality of the circumstances clearly provided Deputy Vess with reasonable suspicion that the driver of the vehicle, namely defendant, did not have an authorized reason for being at the HS that morning. Thus, Deputy Vess's initial stop of defendant to investigate why defendant was at the HS was reasonable under the Fourth Amendment.

After properly initiating an investigatory traffic stop, an officer is permitted to request the driver's license. *See United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008). And a traffic stop may be extended beyond the scope of a routine traffic stop if the officer subsequently possesses a reasonable suspicion that further criminal activity is afoot. *See United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004). This is precisely what occurred here. When Deputy Vess requested defendant's driver's license, defendant admitted that his driver's license was suspended. Virginia Code § 46.2-301 makes it illegal to drive on a suspended license in the state of Virginia. Thus, defendant could no longer be allowed to operate his vehicle. Accordingly, Deputy Vess instructed defendant to park his car and exit his vehicle, and advised defendant that Deputy Vess would assist defendant in making arrangement to have defendant's car towed.

---

[18] *See* June 12, 2020 Hearing Transcript, Dkt. 71, 59:21-23.

At this point, Deputy Vess asked defendant for consent to search the vehicle for guns, drugs, or ammunition. Deputy Vess credibly testified that defendant consented to this search of his vehicle.[19] It is well-settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Deputy Vess found an iPhone and a blue bag containing a collection of sex toys during his search of defendant's vehicle.

At some point subsequent to Deputy Vess's search of defendant's vehicle, Deputy Vess seized the two iPhones[20] that were in defendant's possession without first obtaining a warrant. Defendant challenges Deputy Vess's warrantless seizure of defendant's two iPhones, arguing that the seizure violated his Fourth Amendment rights. The government argues that Deputy Vess's seizure of the two iPhones falls into two well-established exceptions to the warrant requirement: (i) consent and (ii) exigent circumstances.

Here, the exigent circumstances exception to the warrant requirement justified Deputy Vess's seizure of the two iPhones. The Supreme Court has made clear that officers may seize and secure "cell phones to prevent destruction of evidence while seeking a warrant." *Riley v. California*, 573 U.S. 373, 388 (2014) (citing *Illinois v. McArthur*, 531 U.S. 326, 331–333 (2001)). In such circumstances, a "temporary warrantless seizure will be upheld if it 'was supported by probable cause[,] and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time.'" *United States v. Grinder*, No. 19-4392, 2020

---

[19] As noted in note 7 *supra*, defendant's conflicting testimony regarding whether he consented to Deputy Vess's search of his vehicle for guns, drugs, or ammunition is not credible. Accordingly, on this record, the evidence persuasively establishes that defendant consented to Deputy Vess's search of his vehicle for guns, drugs, or ammunition.

[20] Deputy Vess found one iPhone during his consent search of defendant's vehicle. Deputy Vess had witnessed defendant receive a call from the Minor Victim on the other iPhone prior to Deputy Vess's consent search of defendant's vehicle.

WL 1672809, at *2 (4th Cir. Apr. 6, 2020) (quoting *Illinois v. McArthur*, 531 U.S. 326, 334 (2001)).

The following factors provided Deputy Vess probable cause to seize defendant's iPhones to prevent the possibility that defendant could delete any communications between defendant and the Minor Victim on the two iPhones while law enforcement sought a search warrant:

- (1) Deputy Vess witnessed defendant speak with the Minor Victim using one of the iPhones during the September 25, 2019 interaction.

- (2) The HS SSO informed Deputy Vess that there was a history of interaction between defendant and the Minor Victim.

- (3) When Deputy Vess asked defendant if he was at the HS to pick up the Minor Victim, defendant told Deputy Vess that Detective Orr would know.

- (4) Deputy Vess then contacted Detective Orr who informed Deputy Vess that there was an ongoing LCSO investigation into defendant regarding allegations that defendant was having a sexual relationship with the Minor Victim.

- (5) The SSO, after calling Minor Victim's parents, informed Deputy Vess that defendant did not have authorization to pick up the Minor Victim from the HS.

- (6) The SSO also informed Deputy Vess that defendant was not listed in the school-maintained database as someone who was authorized to pick up the Minor Victim from the HS.

- (7) Deputy Vess found a plastic bag that contained a collection of sex toys in defendant's car.

These factors, taken together, are sufficient to provide probable cause that the two iPhones in defendant's possession contained communications between defendant and the Minor Victim that would provide evidence that defendant was contributing to the delinquency of a minor, in violation of Virginia Code § 46.2-371. More, Detective Orr diligently obtained a search warrant to search the two iPhones on the same day that the iPhones were seized. Accordingly, the seizure and the search of defendant's two iPhones on September 25, 2019 did not violate defendant's Fourth Amendment rights.

In sum, (i) Deputy Vess's investigatory stop of defendant on September 25, 2019 was supported by reasonable suspicion; (ii) Deputy Vess's warrantless search of defendant's vehicle was conducted in accordance with defendant's consent; and (iii) Deputy Vess's subsequent warrantless seizure of defendant's two iPhones was supported by probable cause and was designed to prevent the destruction of evidence while law enforcement secured a warrant to search the two iPhones, which law enforcement promptly did. Accordingly, defendant's motion under the Fourth Amendment to suppress evidence from the two iPhones seized on September 25, 2019, along with any fruits therefrom, must be denied.

## V.

For the reasons set forth above, defendant's motion to suppress must be denied in its entirety. First, all of the evidence from defendant's electronic devices was obtained in accordance with valid state search warrants. Thus, defendant's motion to suppress the evidence from all of defendant's electronic devices must be denied. Second, Deputy Vess's questioning of defendant on September 25, 2019 was fully consonant with defendant's Fifth and Sixth Amendment rights to counsel, and therefore defendant's motion to suppress those statements must be denied. And third, Deputy Vess's warrantless seizure of defendant's two iPhones on September 25, 2019 was supported by probable cause and was designed to prevent the destruction of evidence while law enforcement secured search warrants to search the two iPhones, search warrants that law enforcement obtained the same day as Deputy Vess's seizure of defendant's two iPhones. Accordingly, defendant's motion to suppress the evidence from those two iPhones must also be denied.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
July 9, 2020

/s/

T. S. Ellis, III
United States District Judge